**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

AJITPAL SINGH SAMRA,

Plaintiff,

v. Case No. 1:23-CV-00465-MLG-JFR

FANDANGO II, LLC, d/b/a
REVOLUTION EVENTS, and
ENZO COYOTE SCARNECCHIA,

Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

This negligence action results from a traffic collision between Plaintiff Ajitpal Singh Samra and Defendant Enzo Coyote Scarnecchia, a former employee of Defendant Fandango II, LLC. *See* Doc. 1-2 at 1-2. Although the crash occurred in New Mexico, neither party is a citizen of this state. Samra, who is a Washington resident, was traveling within New Mexico when he stopped on the shoulder of Interstate 40 in McKinley County to address a blown tire. *Id.* at 1 ¶ 1, 2 ¶ 9. At the same time, Scarnecchia[1] was driving a Fandango box truck when he collided with Samra's vehicle. *Id.* at 2 ¶¶ 8, 10; Doc. 1 at 1 ¶ 2. Scarnecchia was apparently traveling to California at the time of the wreck, and Samra's ultimate destination is unclear on the record before the Court. *See* Doc. 1-2 at 2 ¶ 8; Doc. 9 at 8-9.

On February 7, 2023, Samra brought this action against Fandango and Scarnecchia in the First Judicial District Court of the State of New Mexico. *See* Doc. 1-2. In his complaint, Samra

[1] Scarnecchia was a resident of Maryland at the time of the collision, Doc. 1-2 at 1 ¶ 3, but has subsequently moved overseas. Doc. 24 at 37:1-3, 40:12-18.

asserts a negligence claim against both defendants. *See id.* at 4-6. On May 30, 2023, Fandango removed this case to federal court, invoking this Court's diversity jurisdiction, Doc. 1, and subsequently filed its motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Doc. 9. Fandango argues personal jurisdiction is lacking for two reasons. First, it asserts there is no general jurisdiction (a point on which Samra agrees) because Fandango does not have continuous and systematic contacts with New Mexico. *Id.* at 2. Second, Fandango challenges the applicability of specific jurisdiction by asserting that its "business activities were not purposefully directed at New Mexico." *Id.* Fandango further argues it will suffer an "immense burden" that would violate the notions of fair play and substantial justice if it is required to defend itself in New Mexico. *Id.*

## DISCUSSION

### I. Personal Jurisdiction and Minimum Contacts

The test for personal jurisdiction "begins with two questions." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). First, the Court looks to whether "an applicable statute authorizes service of process on that defendant," and second, whether "the exercise of statutory jurisdiction comports with constitutional due process." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Because New Mexico's long arm statute, NMSA 1978, § 38-1-16 (1971), "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," the first inquiry is subsumed by the second. *Tercero v. Roman Cath. Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 48 P.3d 50. For that reason, the Court only undertakes the constitutional analysis to determine whether the exercise of personal jurisdiction comports with notions of due process. Thus, the relevant question is whether Fandango has sufficient minimum contacts with New Mexico "such that having to defend a lawsuit []here

would not 'offend traditional notions of fair play and substantial justice.'"[2] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may be established over an out-of-state corporation by demonstrating the existence of either general or specific jurisdiction.[3] The latter, which is at issue in this case, permits a court to "exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). As the Tenth Circuit has explained, this kind of jurisdiction benefits both parties: "in exchange for benefitting from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078 (internal quotation omitted).

To determine whether specific jurisdiction exists, courts assess whether (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities," like a business transaction or a tortious act. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). The first element—purposeful direction—requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Rusakiewicz v. Lowe*,

---

[2] As the plaintiff, Samra shoulders the burden of establishing personal jurisdiction. *See XMission*, 955 F.3d at 839. However, at this early stage of the litigation, he need only make a prima facie showing of jurisdiction and all factual questions must be resolved in his favor. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022).

[3] General jurisdiction over a corporation may be had where the company's actions in the forum state are "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). Although addressed in his response, Samra conceded during oral argument that general jurisdiction is not applicable in this case. Doc. 24 at 14:2-3. Accordingly, the Court takes Samra at his word and limits the scope of its analysis to the question of "minimum contacts" in the context of specific jurisdiction.

556 F.3d 1095, 1101 (10th Cir. 2009) (cleaned up). The second element asks whether the injuries "arise[] from essentially the same type of [purposefully directed] activity, even if the activity that gave rise to the claim was not directed at the forum residents." *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (cleaned up).

If the Court concludes the minimum contacts test has been met, it must then assess whether specific personal jurisdiction over Fandango would "offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 908. In this concluding step, the Court asks whether the defendant has "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080. A defendant's "showing under these factors operates on a sliding scale." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020) (quotation marks and citation omitted). "The weaker a plaintiff's showing with respect to minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (quotation marks omitted).

## II. Fandango purposely directed its activities at New Mexico and Samra's injuries arise out of that conduct.

"In general, purposeful direction may be established under [one of four] four frameworks, including: (1) continuing relationships with forum state residents; (2) deliberate exploitation of the forum state market; (3) harmful effects in the forum state; and (4) the stream of commerce theory." *Spak v. Riturani*, No. 1:22-cv-00201, 2022 U.S. Dist. LEXIS 155438, at *13 (D.N.M. Aug. 29, 2022). Where, as here, jurisdiction is predicated on the situs of tortious conduct, purposeful direction is best viewed through the lens of the harmful effects test. *Id*. The harmful effects inquiry

asks whether the plaintiff has demonstrated: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) . . . knowledge that the brunt of the injury would be felt in the forum state." *Id*. (quoting *Dental Dynamics*, 946 F.3d at 1231).

With the facts available at this early stage of litigation, the Court finds that the elements of the harmful effects framework have been met. First, Scarnecchia intentionally drove on New Mexico roadways and used that infrastructure to facilitate Fandango's business. *See* Doc. 24 at 33:25-34:20 (defense counsel described Fandango as an "event party rental company" that "travel[s] nationwide"). Second, although the nature of the contact with New Mexico was transient, Scarnecchia's travel was expressly aimed at the state such that he chose the route to California to include New Mexico highways. Third, given that Fandango employed Scarnecchia, Fandango should have been aware of its employee's trip through New Mexico and the possibility of a collision on that journey. *See Faehnrich v. Monte Carlo Transp. Co.*, No. 2:23-cv-00316, 2023 U.S. Dist. LEXIS 189244, at *11-12 (D. Utah Oct. 20, 2023) (concluding the purposeful direction of the defendant's "driver to enter the state and traverse Utah's roadways" meant the defendant could anticipate "being haled into Utah's courts for claims arising from that use"); *Spak*, 2022 U.S. Dist. LEXIS 155438, at *17 (finding defendant, a manager of defendant-corporation, "would have known or should have known which states his trucks would travel through to complete deliveries, including the state of New Mexico"); *cf. Brandi v. Belger Cartage Serv., Inc.*, 842 F. Supp. 1337, 1341-42 (D. Kan. 1994) (concluding Kansas court had personal jurisdiction over Colorado broker that arranged for shipment by Arizona carrier from Missouri to Colorado after freight was damaged in Kansas because broker must have been aware that goods would travel through Kansas and broker should have foreseen being brought into court in a state through which it had arranged for the shipment of goods).

Further, Fandango benefitted from the use of New Mexico roadways—because routes through the state were direct and expedient[4]—and, in exchange, Fandango consented to the exercise of jurisdiction for claims related to that use. *See Dudnikov*, 514 F.3d at 1078. Therefore, Fandango could have reasonably expected to be in court in New Mexico after its employee intentionally used the highways and was involved in a collision *en route* to the final delivery destination.

As to the second requirement of minimum contacts, Samra's cause of action clearly arises out of Fandango's purposeful contact with New Mexico. *See Old Republic*, 877 F.3d at 908. There is a direct connection between Scarnecchia driving on New Mexico roadways—Fandango's contact with the state—and the collision in McKinley County during that use—the factual basis for Samra's negligence action. Additionally, New Mexico first responders provided services at the scene immediately after the collision and emergency medical professionals attended to Samra's care thereafter. *See* Doc. 12 at 4; Doc. 24 at 20:15-16. This is not the case where Fandango's contacts with New Mexico were so "random, fortuitous, or attenuated" that Fandango could not have anticipated litigating in New Mexico courts. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Fandango's decisions and the associated consequences all directly relate to the merits of Samra's claims.

[4] The Court may take judicial notice of information contained in maps. *See United States v. Burch*, 169 F.3d 666, 671-72 (10th Cir. 1999); *Dixon v. Stone Truck Line, Inc.*, 2:19-cv-000945, 2020 U.S. Dist. LEXIS 228168, at *22 (taking judicial notice of routes from Corsicana, Texas to Watsonville, California via Google Maps); Fed. R. Evid. 201(b). Using Google Maps, two of the three routes from Baltimore, Maryland to Los Angeles, California go through New Mexico with an estimated thirty-nine-hour travel time. *Cf.* Doc. 24 at 36:4-11 (defense counsel explaining similar differences in travel times).

**III. Specific jurisdiction over Fandango is reasonable and comports with traditional notions of fair play and substantial justice.**

Having found Samra met his burden to demonstrate minimum contacts, the Court considers whether exercising personal jurisdiction over Fandango (and the claims against it) would be unfair and unjust. As the party challenging jurisdiction, Fandango must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). Factors germane to this inquiry include: "(1) the burden on the defendant, (2) the forum State's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *XMission*, 955 F.3d at 840 (quoting *Old Republic*, 877 F.3d at 909).

In considering the first factor, the Court agrees that Fandango will suffer a burden if required to defend this litigation in New Mexico. However, the extent of that burden is a point of contention between the parties. Fandango argues litigation in New Mexico would cause it to suffer "an immense burden" because it is not a resident of the state and Samra is not domiciled in the state. Doc. 9 at 9-10. It points out that Samra "received minimal medical treatment in New Mexico," the "vast majority of discovery" will likely occur in Washington and Maryland, and the most efficient resolution of this case would not be furthered by litigation in New Mexico. *Id.* at 10. Samra disagrees and argues that "critical evidence and potential witnesses" are in the state, including police officers, paramedics, and emergency room physicians. Doc. 12 at 4; Doc. 24 at 20:15-16.

While the parties dispute the degree of hardship Fandango will bear if required to litigate in New Mexico, consensus exists that discovery will be a multi-state endeavor. *See* Doc. 24 at

20:9-24, 29:1-16, 31:18-32:2. Depositions and other proceedings will be had in New Mexico, Maryland, and Washington, and it is likely that witnesses will be identified in other states too. So, while there is undoubtedly some burden on Fandango in defending this litigation in New Mexico, ultimately, "one side must bear the inconvenience of litigating on the road," and Fandango has "not indicated that [its] defense of this case would be hindered by the territorial limits on the [forum's] power to subpoena relevant witnesses, or indeed hampered in any other significant way." *Dudnikov*, 514 F.3d at 1081 (internal quotation marks omitted). Thus, the Court concludes Fandango has not shown that litigating here would be so burdensome as to violate traditional notions of fair play and substantial justice.

Furthermore, the factors attendant to notions of fair play and substantial justice must be assessed as a collective whole, *XMission*, 955 F.3d at 840, and the other relevant considerations all weigh in favor of jurisdiction. Specifically, the collision happened in New Mexico and was subsequently investigated by New Mexico law enforcement, Doc. 12 at 4; Samra received immediate medical treatment in New Mexico for the injuries sustained from the crash, *id.*; and New Mexico has an interest in resolving a case stemming from an automobile accident that occurred here. *See Spak*, 2022 U.S. Dist. LEXIS 155438, at *22 (finding the District of New Mexico had an interest in providing a forum and resolving "disputes involving accidents occurring on its roadways"). On balance, these factors favor a finding of specific personal jurisdiction—particularly considering the Court's conclusion that Fandango's conduct establishes minimum contacts with New Mexico.

## CONCLUSION

For the reasons explained above, the Court has specific personal jurisdiction over Fandango. Fandango's motion to dismiss, Doc. 9, is hereby denied.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA